IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO.: 1:21-cr-500-RAH |
| | )            [WO] |
| JASON STARR and | ) |
| DARIN STARR | ) |

**MEMORANDUM OPINION AND ORDER**

On January 4, 2024, Defendants Jason Starr and Darin Starr were sentenced to a term of life imprisonment following a jury trial where both Defendants were found guilty of a murder-for-hire conspiracy under 18 U.S.C. § 1958 that resulted in the death of Sara Starr. The issue of restitution was left open, to be determined by the Court later. The issue of restitution now being fully briefed and with the benefit of a hearing on the matter, the Court orders restitution in the total amount of $1,069,242.03 against the Defendants. This is a reduction of $17,336.79 from the total amount sought by the Government on behalf of the eleven victims here.

**I.     DISCUSSION**

**A. Restitution Sought**

The purpose of the Mandatory Victims Restitution Act is "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Collin*, 854 F.3d 1324, 1329 (11th Cir. 2017) (citation omitted). For crimes of violence, restitution is mandatory. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(i); *see also* 18 U.S.C. § 16 (defining crime of violence).

At the restitution hearing in this case, the Defendants did not contest that murder-for-hire under 18 U.S.C. § 1958 is a crime of violence, that restitution is

1

mandatory or that the Government's proposed victims are in fact victims who may obtain restitution under the MVRA. All that is contested is the amount of restitution available for the victims. The Government bears the burden of establishing restitution amounts by a preponderance of evidence.

Along with Sara Starr's (the decedent) estate, multiple additional individuals were harmed by the Defendants' criminal conduct. Four of those victims are the minor children of Defendant Jason Starr and Sara Starr. Other victims include Sara Starr's mother, Rhonda Whisler; Sara Starr's brother, Shawn Shubert; the Coffee County Department of Human Resources (Coffee County DHR); the South Dakota Department of Human Resources (South Dakota DHR); Humana/Tricare; and Alabama Medicaid. The Government seeks a total restitution amount of $1,086,578.82, broken down as follows:

1. Estate of Sara Starr: $989,008.00 in lost future income;

2. Rhonda Whisler: $23,480.44 for funeral expenses, lost income, travel, and child care expenses;

3. Shawn Shubert: $6,886.74 for funeral expenses, travel, and child care expenses;

4. Humana/Tricare: $4,423.09 for mental health expenses for the four minor children;

5. Alabama Medicaid: $849.00 for healthcare for the four minor children;

6. Coffee County DHR: $49,119.70 for child care and mental health expenses; and,

7. South Dakota DHR: $12,811.85 for child care and healthcare expenses.

B. **Defendants' Objections**

Defendants raise several objections. They argue that (1) lost future income to the estate of Sara Starr is speculative and not supported by the facts of the case; (2) the funeral expenses go beyond the "required" expenses for a funeral; (3) Ms. Whisler's travel expenses were not necessary, nor is her lost income recoverable; (4) Defendant Jason Starr is entitled to an offset for continuing child support and insurance premium payments made during the pendency of the criminal investigation and his criminal case; (5) at the time of her death, Sara Starr had untouched inheritance that could offset restitution; (6) the Coffee County DHR and South Dakota DHR paid for certain expenses that would have been incurred by Sara Starr even if she had not died; (7) the Court must consider the Defendants' ability to pay a restitution award, especially a sizable one such as that being sought by the Government; and (8) the Court is statutorily prohibited from imposing restitution that will exceed the amount of the maximum fine which could be ordered. The Court will examine each of these arguments more below.

   i.   **Lost Future Income**

Defendants object to the lost future income request by the Government on behalf of Sara Starr's estate. Their objection will be overruled. Title 18 U.S.C. § 3363(A)(b)(2)(C) authorizes restitution to all victims of qualifying offenses resulting in bodily injury, including those who die from the criminal conduct at issue. *See United States v. Messina*, 806 F.3d 55, 67–68 (2d Cir. 2015). In any offense resulting in death, the MVRA requires the defendant to pay restitution for "income lost by such victim as a result of such offense." 18 U.S.C. § 3663A(b)(2)(C). And while the Eleventh Circuit has not expressly addressed the issue of "lost future income" in the context of the MVRA, the Second, Eighth, Ninth, and Tenth Circuits have held that "lost income" includes "future income" that is lost to the victim as a direct result of the crime causing bodily injury or death. *See Messina*, 806 F.3d at 69 ("[L]ost

income is . . . understood to encompass future income lost from death or injury[.]"); *United States v. Serawop*, 505 F.3d 1112, 1118–21 (10th Cir. 2007); *United States v. Cienfuegos*, 462 F.3d 1160, 1163–69 (9th Cir. 2006); *United States v. Oslund*, 453 F.3d 1048, 1062–63 (8th Cir. 2006).  The logic in those decisions is well-reasoned, and the Court adopts it here.  As a result, the Court concludes that "income lost" under the MVRA includes lost future income of the deceased victim.

While the Defendants do not object to the calculation of lost future income made by Dr. Robert W. McLeod, they do argue that such an award is speculative and should be disregarded or limited.  The Court disagrees.  The lost future income figure is based on Dr. McLeod's economic report.  Dr. McLeod calculated at present value the lost future income figure based on a projected retirement age of 60.39 years.  For a death involving a healthy, single, working-age adult of limited means who was employed as a schoolteacher at the time of her death, it is entirely reasonable to assume that she would have worked as a schoolteacher until she reached retirement age.  Such assumptions are not so speculative to be unreliable and are regularly allowed in wrongful death and personal injury cases where economic loss damages are sought.  The Government has met its burden here, and thus the Defendants' objection is overruled and lost future income of $989,008, according to Dr. McLeod's report, will be ordered.[1]

## ii.    Funeral costs

Defendants argue that $500 for flowers and photographs of Sara Starr for the funeral are not "required" funeral costs and therefore that cost should not be included in a restitution order.  This objection will be overruled.

With an offense resulting in the death of a victim, the Court shall order that the defendant "pay an amount equal to the cost of necessary funeral and *related*

---

[1] As discussed at the hearing, a plausible argument could be made that the estate could also claim restitution for alimony, which Jason Starr no longer was required to pay due to Sara Starr's death.

4

*services*[.]" 18 U.S.C. § 3663A(b)(3) (emphasis added).  *See also United States v. Grover*, 486 F. Supp. 2d 868, 891 (N.D. Iowa 2007) (restitution includes not only funeral bills but miscellaneous expenses associated with the funeral after the death of the victim).  Photographs of Sara Starr and flower arrangements for her funeral are "related services" under the MVRA.  *See United States v. Harwood*, 854 F. Supp. 2d 1035, 1060–61 (D.N.M. 2012) (noting the nexus between the funeral-related expenses and the funeral service).  And the $500 requested is not exorbitant, nor is there anything extravagant or unconventional about these items at a funeral.  Accordingly, the Defendants' objection is overruled.

     iii.    **Ms. Whisler's Travel Expenses and Lost Income**

Defendant Darin Starr argues that travel expenses and lost income of Ms. Whisler are not supported by sufficient evidence to warrant restitution.  At the hearing, Darin Starr conceded that Ms. Whisler's flight to Enterprise following Ms. Starr's death is recoverable under the MVRA.  He maintains, however, that her subsequent trip to Enterprise at the urging of law enforcement to take the children out of school during an active shooter drill was not a necessary expense.  Darin Starr cites no case law to support his position and this objection will be overruled.

The minor children's mother was brutally murdered with a firearm.  It is entirely reasonable that a close relative, instead of the Coffee County DHR, should travel to Enterprise and remove the children from school during an active shooter drill due to the minor children's sensitivities following their mother's death.  And obviously Ms. Whisler did not make this decision on her own initiative because local law enforcement asked her to do this.

Jason Starr also argues that Ms. Whisler is not owed restitution for lost income associated with traveling to Enterprise to attend custody hearings for the minor children.  This objection is also due to be overruled.  The MVRA allows restitution to "reimburse the victim for lost income and necessary child care, transportation,


and other expenses incurred during participation in the investigation or prosecution of the offense or *attendance at proceedings related to the offense*." 18 U.S.C. § 3663A(b)(4) (emphasis added).  The murder of Sara Starr by the Defendants left Jason and Sara Starr's children without a parental guardian.  At the time of Sara Starr's death, she was the primary custodian of the minor children.  Jason Starr had charges pending in Coffee County Circuit Court involving the minor children and another custodian was needed.  Naturally, Ms. Whisler's travel expenses to Enterprise and lost income from attending child custody hearings are expenses incurred as a direct result of Sara Starr's murder and were proceedings related to the offense.  Accordingly, Jason Starr's objection on this issue is overruled.

    **iv.    Offsets**

Defendant Jason Starr argues that any restitution amount should be offset because he continued to pay child support ($85,100.22) and health insurance premiums ($4,860) for the children after Sara Starr's death.  He also states that he has funded college education accounts for the children and that Sara Starr had received a small inheritance from Jason Starr's grandmother that still existed at the time of her death and could have been used for child-related expenses.

Jason Starr has failed to show his entitlement to an offset to the Government's restitution request on the basis of child support and insurance premium payments he claims to have made.[2]  He does not provide any documentary evidence to support these claims, nor any case law showing that these are valid methods of offsetting restitution.  The Court cannot blindly rely on assertions from Jason Starr that he made these payments.  And as a defendant claiming an offset right, Jason Starr bears the burden of proving an offset under 18 U.S.C. § 3664(j)(2), which includes proving

---

[2] The Court notes that the Government could have sought more restitution from the Defendants. For example, Jason Starr was required to provide alimony payments to Sara Starr under their divorce agreement.  Those alimony payments ceased at her death.

the value of any alleged offset. *See United States v. Parker*, 927 F.3d 374, 381–82 (5th Cir. 2019). He has not done so, and his objection is therefore overruled.

And as to an offset for funding college tuition accounts, had the Government sought restitution for college expenses, then Jason Starr's request for an offset may have some merit. That said, the Government has not made such a request. Accordingly, this objection is overruled.

Similarly, as to an offset due to an inheritance that Sara Starr received from Jason Starr's family before her death, Jason Starr has failed to show why he is entitled to an offset here, especially when the inheritance is not tied to any restitution category sought by any victim and was received by Sara Starr before her death. And the Court's own research has revealed no legal basis for allowing a criminal defendant to an offset of restitution simply because the victim has other sources of income or has money set aside or in an account. Accordingly, this objection is overruled.

The Defendants do, however, raise one meritorious objection. The Defendants argued during the restitution hearing that certain expenses sought by the Coffee County DHR and South Dakota DHR (e.g., optical exams and contacts, school supplies, educational/vocational services, and wellness exams for the minor children) were expenses that would have been incurred by Sara Starr regardless of her untimely death and therefore these expenses should not be ordered as restitution, especially when Sara Starr's estate is also seeking lost future income.

"[I]n the case of an offense resulting in bodily injury to a victim, [Defendants shall] pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care[.]" 18 U.S.C. § 3663A(b)(2)(A). School supplies, optical exams, contacts, and educational/vocational expenses are not expenses necessarily incurred as a result of Sara Starr's death—these expenses ($17,336.79) would have been incurred

7

regardless of whether Sara Starr died. But the fact of her death did transfer the obligation to pay these expenses to the Coffee County DHR and South Dakota DHR. As a result, the Court will order restitution to the Coffee County DHR and South Dakota DHR for these expenses, but will deduct $17,336.79 from the estate's lost future income figure.

### v. Defendants' ability to pay

Jason Starr argues that restitution should not be ordered, or should be limited, because the Court must consider his ability to pay and because the Court cannot impose restitution that exceeds the amount of a fine that may be ordered under the Sentencing Guidelines. Both objections are due to be overruled for the simple reason that restitution is mandatory regardless of the Defendants' financial resources or the amount of the fine ($25,000). And the statutory factors cited by Jason Starr in his written objection, apply only if restitution is discretionary, which it is not here. *Compare* 18 U.S.C. § 3663(a)(1)(B)(i)(II) (discretionary restitution) *with* 18 U.S.C. § 3663A (mandatory restitution). *See also United States v. Yeager*, 331 F.3d 1216, 1227 (11th Cir. 2003) ("[W]e note that restitution is mandatory, without regard to a defendant's ability to pay, when the crimes of conviction are . . . offenses under Title 18 of the United States Code.").

## II.   CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendant Darin Starr's Objections (doc. 264) are **OVERRULED.**
2. Defendant Jason Starr's Motion to Seal (doc. 265) is **DENIED as moot**, pursuant to this Court's Order (doc. 218).
3. Defendants, jointly and severally, shall pay restitution in the total amount of $1,069,242.03 to be allocated as follows:
    a. To Sara Starr's Estate: $971,671.21;
    b. To Rhonda Whisler: $23,480.44;

c. To Shawn Shubert: $6,886.74 for funeral, travel, and child care expenses;

d. To Humana/Tricare: $4,423.09 for mental healthcare of the minor children;

e. To Alabama Medicaid: $849.00 for healthcare of the minor children;

f. To the Coffee County Department of Human Resources: $49,119.70 for child care and mental healthcare expenses for the minor children; and,

g. To the South Dakota Department of Human Resources: $12,811.85 for child care and mental healthcare expenses.

An amended final judgment will follow.

**DONE** on this the 26th day of April 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE